IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

FIRST MERCURY INSURANCE
COMPANY,

         Plaintiff,

v.              CIVIL ACTION NO.   3:16-4381

MONITRONICS INTERNATIONAL, INC.,
ALLIANCE SECURITY, INC.,
ISI ALARMS, INC.,
ISI ALARMS NC, INC.,
VERSATILE MARKETING SOLUTIONS, INC.,
MAXIMUM SECURITY ALARM,
POWER HOME TECHNOLOGIES, LLC,
POWER HOME TECHNOLOGIES, INC.,
STEADFAST INSURANCE COMPANY,
LEXINGTON INSURANCE COMPANY,
ABC CORPS 1-50 (Said names being fictitious and
unknown entities), and
JOHN DOE INSURERS 1-50 (Said names being
fictitious and unknown entities),

         Defendants.

**MEMORANDUM OPINION AND ORDER**

On April 8, 2016, Plaintiff First Mercury Insurance Company (First Mercury) filed a declaratory judgment action in the Circuit Court of Cabell County, West Virginia, against Monitronics International, Inc. (Monitronics), Alliance Security, Inc. (Alliance), ISI Alarms, Inc. and ISI Alarms NC, Inc. (collectively ISI), Versatile Marketing Solutions, Inc. (Versatile), Maximum Security Alarm (Maximum), Power Home Technologies, LLC and Power Home Technologies, Inc. (collectively Power Home), ABC Corps 1-50 (said names being fictitious and unknown entities), and John Doe Insurers 1-50 (said names being fictitious and unknown entities)

over an insurance dispute arising from a consolidated multi-district litigation (MDL) action, and other related actions, filed against Defendant Monitronics. The MDL action is pending in the Northern District of West Virginia and involves class action claims under the Telephone Consumer Protection Act (TCPA lawsuits). In the TCPA lawsuits, the plaintiffs generally allege that Monitronics' dealers and agents violated the TCPA by placing calls to sell home alarm and security systems.

On May 13, 2016, Monitronics removed the declaratory judgment action to this Court pursuant to 28 U.S.C. § 1332(a)(1) based upon diversity of citizenship and an amount in controversy exceeding $75,000.[1]  Despite the necessity of diversity of citizenship under the statute, Monitronics concedes in its Notice of Removal that Plaintiff First Mercury and Defendant Alliance are non-diverse parties, as both are Delaware corporations. Nevertheless, Monitronics argues that Alliance is fraudulently joined, making its citizenship irrelevant and removal proper. First Mercury disagrees and has filed a Motion to Remand.[2] Additionally, just five days after removal, First Mercury filed an Amended Complaint naming three insurance companies who were previously unknown to First Mercury and identified in the original complaint as "John Doe Insurers." These new Defendants include Steadfast Insurance Company (Steadfast), Lexington Insurance Company (Lexington), and Mt. Hawley Insurance Company (Mt. Hawley). Both Steadfast and Lexington also are alleged to be Delaware corporations and, thus, non-diverse defendants.[3]

---

[1] Section 1332(a)(1) provides, in part: "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1).

[2] The parties do not dispute the amount in controversy exceeds $75,000.

[3] Mt. Hawley was voluntarily dismissed from this action on August 12, 2016.

When confronted with a question of fraudulent joinder, the Fourth Circuit has stated that "the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (emphasis in original) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)). Additionally, "the party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Id*. (citation omitted). At this point, a plaintiff's pleadings are treated with great deference as "this standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)." *Id*. (citation omitted). The court also must "resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Marshall v. Manville Sales Corp*., 6 F.3d 229, 232 (4th Cir. 1993) (citation omitted).

Setting aside the parties' dispute as to whether this Court should even consider the citizenship of Steadfast and Lexington as they were identified post-removal, the Court turns to whether Alliance was fraudulently joined as it was named in the original Complaint. In this case, First Mercury alleges Alliance (and the other Marketing Contractor Defendants) entered into service contracts with Monitronics (collectively referred to as the AMPA Contracts), which contain identical hold harmless and indemnification provisions. *Compl.* at ¶¶ 16-25. First Mercury contends these provisions require the Marketing Contractor Defendants to defend, indemnify, and hold Monitronics harmless for the claims made in the MDL action. *Id*. at ¶¶71-78. In turn, First Mercury argues it has a Transfer of Rights provision in its insurance policies, which require

Monitronics to transfer its rights to coverage under the AMPA contracts to First Mercury. In relevant part, this provision states: "If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them." *Compl.* at ¶ 42. Given these provisions, First Mercury argues it properly asserted a claim against the Marketing Contractor Defendants, including Alliance, that they are liable to pay some or all of the defense costs First Mercury has incurred in defending Monitronics.[4]

In response, Monitronics states it filed a coverage lawsuit against First Mercury in the Northern District of Texas one day prior to First Mercury filing its action in the Circuit Court of Cabell County. Monitronics asserts First Mercury filed in state court and named Alliance as a non-diverse Defendant to avoid the Fourth Circuit's first-to-file rule, which would give Texas priority over the lawsuits. *See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594–95 (4th Cir. 2004) (stating "the first suit should have priority, absent the showing of balance of convenience in favor of the second action" (quoting *Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n. 2 (4th Cir. 1974)). Monitronics argues, however, the claims against Alliance are not viable and, therefore, removal was proper.

Specifically, Monitronics states there is a provision in its contract with Alliance that gives exclusive jurisdiction to Texas. Thus, assuming *arguendo* that First Mercury has a right to subrogation, Monitronics insists it cannot bring a claim in West Virginia. Additionally,

---

[4]This argument is made in the alternative in the Complaint. First Mercury's first argument is for a declaration that it does not owe Monitronics any duty to defend or indemnify.

Monitronics asserts that Texas law applies to the AMPA policies. Under Texas law, Monitronics argues that any indemnity obligations Alliance owes Monitronics does not extend to First Mercury. Monitronics states that indemnity provisions under the AMPA contracts only apply to payments made by Monitronics. On the other hand, First Mercury's subrogation right is limited to payments First Mercury has made. Therefore, Monitronics insists that First Mercury cannot assert a claim for subrogation against Alliance. Furthermore, Monitronics argues that, even if First Mercury can assert a valid claim against Alliance, such claim is not ripe and premature under Texas law and the Transfer of Rights provision in First Mercury's policy because the only ripe claim is whether First Mercury has a duty to defend Monitronics.

First Mercury replies that Monitronics' arguments require this Court to entangle itself with contested substantive issues over the validity, enforceability, and interpretation of contractual provisions and a dispute over what state law applies and how the law should be applied to the facts of this case. In particular, First Mercury argues it intends to challenge the forum/venue selection clauses in the AMPA contracts, and it hotly contests Monitronics interpretation of the policies. However, Monitronics' motion requires First Mercury to respond its arguments, and for this Court to embark on a path to resolve these issues, without the benefit of any discovery. Nevertheless, as indicated by First Mercury, the ultimate issue before this Court on its motion to remand is not what side will be victorious on the merits of those arguments. Rather, it is whether First Mercury has pled "only a slight possibility of a right to relief" against a non-diverse defendant. *Hughes v. Wells Fargo Bank, N.A.*, 617 F. App'x 261, 264-65 (4th Cir. 2015) (quoting *Mayes v. Rapoport,* 198 F.3d 457, 466 (4th Cir. 1999)). If so, this Court is without jurisdiction.

Here, it is undisputed that First Mercury has incurred expenses defending Monitronics. First Mercury alleges the contractual provisions in its policy and the AMPA policies allow it to recover those costs from Alliance and others. Although Monitronics disputes First Mercury's claims and insists the claims may not be brought in West Virginia, the Court must treat the pleadings with great deference and apply a standard that is even more lenient than a motion raised under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In doing so, Monitronics has a "heavy burden" to show that First Mercury "cannot establish a claim even after resolving all issues of law and fact in the [First Mercury's] favor." *Hartley*, 187 F.3d at 424 (citation omitted). This Court's role is not to get embroiled in arguments that are best addressed in a motion to dismiss or one for summary judgment, such as challenges to the validity, enforceability, and interpretation of the contractual provisions relied upon by the parties. It is merely to determine if a possible claim exists against a non-diverse defendant.

Under this standard, the Court has no difficulty finding Monitronics has failed to meet its burden. First Mercury has set forth sufficient information in its Complaint to state-*at least*-the slight possibility of a claim against Alliance. First Mercury brought this action as a declaratory judgment action for a court to determine the respective rights and obligations of the parties under the various contracts. Resolving the law and facts in First Mercury's favor and resolving all doubts in favor of the state court retaining jurisdiction, the Court finds remand is necessary. "Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends." *Hartley*, 187 F.3d at 426.

Accordingly, the Court finds diversity jurisdiction does not exist and **GRANTS** First Mercury's Motion to Remand.[5] ECF No. 23. This case is hereby **REMANDED** to the Circuit Court of Cabell County.

In its motion, First Mercury also seeks reimbursement of all costs expended in the defense of this removal. Although the Court finds removal was improper, the Court finds that Monitronics' had an objectively reasonably basis for seeking removal. Therefore, **DENIES** First Mercury's request for reimbursement.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: January 17, 2017

ROBERT C. CHAMBERS, CHIEF JUDGE

---

[5] As this Court finds it does not have jurisdiction over this matter, the Court does not rule on Monitronics' Motion to Strike the Amended Complaint in which it names Lexington, Steadfast, and Mt. Hawley as Defendants. ECF No. 44. Additionally, the Court need not address whether or not these Defendants were fraudulently joined.